**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dolores Eileen Elgrably,<br><br>               Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>               Defendant. | No. CV-17-04760-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Dolores Eileen Elgrably's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of her application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (Doc. 1 at 1–4). The Court now rules on Plaintiff's appeal.

## I.     BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in the ALJ's decision. (*See* Doc. 9-3 at 23–32). Accordingly, the Court will reference the background only as necessary to the analysis below.

## II.    LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance,

i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the ALJ. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the

ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

## A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if she can show that, among other things, she is disabled. 42 U.S.C. § 423(a)(1)(E). A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

## B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ next considers whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's "residual functional capacity" ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting. A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite her impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ

compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work." *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 1520(a)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527; 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (S.S.R. Aug. 9, 2006).

## C. The ALJ's Evaluation under the Five Step Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2013, the alleged onset date. (Doc. 9-3 at 25). In step two, the ALJ ascertained that Plaintiff has the following severe impairments: "degenerative disc disease and spondylosis of the lumbar spine; fibromyalgia; brachial neuritis; and obesity, which is severe in combination with the other impairments." (*Id.*). Under the third step, the ALJ determined that the severity of Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of the impairments listed in the Social Security Regulations. (*Id.* at 27).

Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (*Id.*). The ALJ found that Plaintiff "has the residual functional capacity to perform a range of work at the light exertional level." (*Id.*). Particularly, Plaintiff:

. . . can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about four hours and sit six hours in an eight-hour workday. She can frequently balance, crouch, and occasionally stoop, kneel, crawl, and climb ramps or stairs, but should never climb ladders, ropes, or scaffolds. The [Plaintiff] is capable of frequently handling and occasionally reaching overhead with the bilateral upper extremities. She must also avoid vibration and hazards, such as moving machinery and unprotected heights. In addition, due to pain and the side effects of narcotic pain medication, she is limited to performing only simple, routine tasks.

(*Id.*).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id.* at 30). Finally, the ALJ concluded at step five that based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform a significant number of jobs existing in the national economy, including ticket taker, order caller, and call out operator. (*Id.* at 30–31). Consequently, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from May 1, 2013[1] through June 2, 2016, the date of the ALJ's decision. (*Id.* at 31).

III.    **ANALYIS**

Plaintiff claims that the ALJ's denial of her applications for Social Security Disability Insurance Benefits and SSI was "erroneous," "not supported by substantial evidence," and contrary to the evidence setting forth her inability to engage in substantial gainful employment. (Doc. 1 ¶¶ 13–14). In support of this contention, Plaintiff makes four main arguments for why the ALJ's decision should be reversed for an award of benefits, or, alternatively, remanded for a new hearing. (Doc. 10 at 23). Specifically, Plaintiff asserts that: 1) the ALJ improperly weighed the medical opinion evidence; 2) the ALJ improperly evaluated Plaintiff's testimony; 3) the ALJ improperly determined Plaintiff's RFC; and 4) the Appeals Council failed to properly consider new evidence.

---

[1] Plaintiff filed an application for a period of disability and disability insurance benefits protectively on March 11, 2014, and filed an application for supplemental security income protectively on March 17, 2014. (Doc. 9-3 at 23). In both applications, Plaintiff alleged disability beginning May 1, 2013. (*Id.*).

(Doc. 10 at 1).

## A.    Whether the ALJ Improperly Weighed the Medical Opinion Evidence

Plaintiff first argues that the ALJ erred in giving "little weight" to the opinions of Dr. Soni and Dr. Djurisic, two of Plaintiff's treating physicians. (Doc. 10 at 15).

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent[2] with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted").

ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent

---

[2] Under SSR 96-2P, "not inconsistent" is "a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2P, 1996 WL 374188, at *3 (S.S.A. July 2, 1996).

with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted); *see also* SSR 96-2P, at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ states that the opinions of Dr. Soni and Dr. Djurisic are "inconsistent with the medical evidence and unsupported by clinical findings on examination." (Doc. 9-3 at 29). Specifically, the ALJ believes the opinions of Dr. Soni and Dr. Djurisic "are inconsistent with reports showing a normal gait and stance . . . with full motor strength in the bilateral extremities," and "inconsistent with a December 2015 report showing no back pain." (*Id.*).

The record indicates that Dr. Djurisic was a treating physician who saw Plaintiff at least 14 times in the time spanning from March 1, 2016 through April 13, 2015. (*See* Doc. 9-8 at 72, 75, 78, 81, 84, 87, 90, 93, 97, 100, 103, 106, 109, 112). Dr. Soni, another treating physician, saw Plaintiff at least nine times according to the record. (*See* Doc. 9-8

at 3, 126, 129, 131, 134, 136, 139, 142, 144). In contrast, the record shows that Dr. Yuk only saw Plaintiff six times, (*see* Doc. 9-8 at 16, 21, 26, 30, 35, 41), and Joseph Maidi, PA-C, on just four occasions, (*see* Doc. 9-8 at 115, 119, 123, 146). Despite the fact that Plaintiff saw Mr. Maidi and Dr. Yuk on far fewer occasions, the ALJ gives more weight to the findings of these professionals than to those of Dr. Soni and Dr. Djurisic. (*See* Doc. 9-3 at 28–29). As the opinions of Dr. Soni and Dr. Djurisic are controverted by the clinical findings of two other treating professionals, the Court examines whether the ALJ's decision to afford Dr. Soni's and Dr. Djurisic's opinions little weight is reinforced with "specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198.

The Court finds that the ALJ has not offered "specific and legitimate reasons" for giving little weight to the opinions of Dr. Soni and Dr. Djurisic. *Ryan*, 528 F.3d at 1198. Based on the ALJ's opinion, it is unclear to the Court how, specifically, Dr. Soni's opinion is inconsistent with the December 2015 report showing no back pain, (Doc. 9-8 at 79). As a preliminary matter, the Court notes that such a broad statement, without any examination of how the clinical evidence conflicts with the physician's opinion, does not constitute a "specific and legitimate reason" to reject Dr. Soni's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Plaintiff's case is analogous to *Embrey v. Bowen*. In *Embrey*, the ALJ's opinion reviewed the medical evidence, but concluded only that the treating physicians' opinions of total disability were "unsupported by sufficient objective findings and contrary to the

preponderant conclusions mandated by those objective findings." *Embrey*, 849 F.2d at 421. Rather than set forth sufficiently specific reasons for disregarding the opinions of the treating physicians nor explain why he disagreed with the treating physicians' conclusions, the ALJ "merely states that the objective factors point toward an adverse conclusion and makes no effort to relate any of these objective factors to any of the specific medical opinions and findings he rejects. This approach is inadequate." *Id.* at 422. Accordingly, the Ninth Circuit found that the ALJ's failure to provide "detailed, reasoned, and legitimate rationales for disregarding the physicians' findings" of disability warranted remand for proper consideration of the physicians' evidence. *Id.* Likewise, here, the ALJ's opinion does review the medical evidence, but fails to set forth more than her own conclusion that Dr. Soni's opinion is inconsistent with the December 2015 report showing no back pain. *See id.* at 421–22. Accordingly, the ALJ here, as in *Embrey*, has not met her burden of setting out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* at 421(citation omitted).

As to Dr. Djurisic, her opinion states that Plaintiff suffers from chronic back pain, (Doc. 9-8 at 65), which the ALJ found inconsistent with Dr. Djurisic's own treatment notes from December 4, 2015 indicating that Plaintiff was not experiencing back pain, (Doc. 9-8 at 79). (*See* Doc. 9-3 at 29). In general, the Court notes that it is true that inconsistency between a treating physician's opinion and treatment notes *can* provide a specific, legitimate reason for the ALJ to give a treating physician's opinion less weight. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [the treating physician's] Questionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the plaintiff's] limitations."); *Connett*, 340 F.3d at 875 (holding that the ALJ provided substantial evidence for finding that the treating physician's "extensive conclusions" regarding the plaintiff's limitations were "not supported by his own treatment notes" nor the recommendations of another physician such that the ALJ

could discredit treating physician's testimony); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (holding that the ALJ was entitled to reject a treating physician's opinion because, among other things, his report varied from his treatment notes).

Nevertheless, this case is distinguishable from *Tommasetti*, *Connett*, and *Saelee* because Dr. Djurisic's conclusion in her opinion that Plaintiff suffers from chronic back pain, (Doc. 9-8 at 65), is actually consistent with the overwhelming majority of Plaintiff's medical records which indicate that Plaintiff frequently alerted various medical professionals of her back pain. (*See* Doc. 9-8 at 9, 16, 38, 41, 47, 48, 51–64, 115–17, 119–121, 129, 136–37, 139–140). In fact, the ALJ seems to point to the singular place in the record that Plaintiff indicated that she was not experiencing back pain. Therefore, unlike in *Tommasetti*, it is clear that Dr. Djurisic's conclusion that Plaintiff suffers from chronic back pain is supported by Plaintiff's medical records. *See Tommasetti*, 533 F.3d at 1041 (noting that the ALJ found the treating physician's Questionnaire responses to be inconsistent with the record because the "ultimate conclusions from [the treating physician's] Questionnaire . . . 'did not mesh with [the plaintiff's] objective data or history.'"). Moreover, unlike in *Connett*, Dr. Djurisic's treatment notes consistently acknowledge Plaintiff's history of chronic back pain, (*see* Doc. 73, 75, 78, 81, 85, 88, 90, 94, 98, 101, 104, 107, 110, 112–13), before concluding that Plaintiff suffers from chronic back pain. *See Connett*, 340 F.3d at 875 (indicating that the treating physician's notes nowhere indicate reasons why the treating physician concluded that the plaintiff "would be limited to standing for only ten minutes or lifting only ten pounds").

Regarding the ALJ's finding that the opinions of Dr. Soni and Dr. Djurisic are inconsistent with Plaintiff's denial of back pain at her appointment in December 2015, Plaintiff claims that "[i]t is not plausible to conclude that [she] was pain free" since she was on Oxycodone, a heavy narcotic pain reliever, at the time. (Doc. 10 at 16). Further, Plaintiff argues that her disability "is due primarily to diffuse muscle pain related to fibromyalgia rather than her spinal impairment," so "her denial of back pain at a single visit[] has little relevance to her functioning and level of pain over a prolonged period of

time." (*Id.*).

The Court agrees, as it appears that the ALJ did not "evaluate the record in light of the unique characteristics of fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 667 n. 6 (9th Cir. 2017) (finding that the ALJ erred in giving no weight to the medical opinion of the plaintiff's treating physician where the ALJ did not provide specific and legitimate reasons to reject the treating physician's opinion and neglected to follow the appropriate methodology for weighing a treating physician's medical opinion). Here, the ALJ failed to take into consideration that "the symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Id.* at 663 (quoting SSR 12-2P, 2012 WL 3104689, at *6 (S.S.A. July 25, 2012)); *see also Tully v. Colvin*, 943 F. Supp. 2d 1157, 1165 (E.D. Wash. 2013) (noting that with fibromyalgia, the "symptoms can be worse at some times than others") (citation omitted). That is why the Social Security Administration recommends looking at "a longitudinal record whenever possible." SSR 12-2P, at *6. Therefore, the Court finds that the ALJ's statement that the opinions of Dr. Soni and Dr. Djurisic are inconsistent with the December 2015 report showing no back pain is not a specific and legitimate reason supported by substantial evidence. *See Ryan*, 528 F.3d at 1198.

Further, the Court finds that the ALJ's determination that the opinions of Dr. Soni and Dr. Djurisic are "inconsistent with reports showing a normal gait and stance . . . with full motor strength in the bilateral extremities," (Doc. 9-3 at 29 (citing Doc. 9-8 at 18, 36–37, 147)), also does not constitute a "specific and legitimate reason" for giving little weight to the opinions of Dr. Soni and Dr. Djurisic. *Ryan*, 528 F.3d at 1198. Again, the ALJ fails to indicate how, specifically, the opinions of Dr. Soni and Dr. Djurisic are inconsistent with such reports showing normal gait, stance and extremity strength. As noted, *supra*, without any examination of how the clinical evidence conflicts with these physician's opinions, the ALJ's broad statement is insufficient to constitute a "specific and legitimate reason" to reject the opinions of Dr. Soni and Dr. Djurisic. *See Embrey*, 849 F.2d at 421; *Garrison*, 759 F.3d at 1012–13. Again, the ALJ has not met her burden

of setting out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* While it is true that the "ALJ is responsible for resolving conflicts in the medical record," *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted), it is unclear from the ALJ's opinion how Dr. Soni and Dr. Djurisic's opinions even conflict with the medical evidence in this case. *See Trevizo*, 871 F.3d at 676–77 (holding that the ALJ erroneously rejected the treating physician's opinion where, in lieu of offering a "specific and legitimate" reason for discounting the opinion, "the ALJ pointed to nothing in [the treating physician's] treatment notes or elsewhere in the clinical record that contradicted the treating physician's opinion" but merely offered a "conclusory determination that [the treating physician's] opinion was contradicted by his treatment notes").

Not only does the ALJ fail to express how Dr. Soni and Dr. Djurisic's opinions conflict with the medical evidence, but the ALJ also does not indicate how these treating physicians' opinions are unsupported by the objective medical findings. *See Batson*, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings"). The ALJ does not assert that medical findings of normal gait and stance and full motor strength in the bilateral extremities are inconsistent with a fibromyalgia diagnosis—or any other diagnosis made by Plaintiff's treating physicians. (*See* Doc. 9-3 at 23–32). In contrast, Plaintiff claims that the opinions of Dr. Soni and Dr. Djurisic "are based on appropriate medical findings consistent with an individual who suffers from disabling fibromyalgia." (Doc. 10 at 16). In support of her contention that findings of abnormal gait, stance, and extremity strength are not associated with fibromyalgia, (Doc. 10 at 15), Plaintiff cites a Ninth Circuit opinion which states that "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes [that] are normal." *Revels*, 874 F.3d at 663 (citations and internal quotations omitted); *see also Satterwaite v. Astrue*, 781 F. Supp. 2d 898, 912 (D. Ariz. 2011) ("[F]ibromyalgia patients may 'present no objectively alarming signs' and may 'manifest normal muscle strength and neurological reactions

and have a full range of motion.'") (citation omitted).

In addition to providing only vague conclusions—rather than specific and legitimate reasons—for giving little weight to the opinions of Dr. Soni and Dr. Djurisic, the ALJ erred by failing to evaluate these treating sources' opinions according to the factors provided in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Although the ALJ stated that the opinions of Dr. Soni and Dr. Djurisic are "inconsistent with the medical evidence and unsupported by clinical findings on examination," (Doc. 9-3 at 29), the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6); 416.927(c)(2)–(6). According to the Ninth Circuit, the ALJ's failure to apply these factors in determining the extent to which the opinions should be credited "alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676 (noting that the ALJ's outright rejection of the plaintiff's treating physician's opinion was legally erroneous, even though the ALJ noted that this opinion conflicted with the plaintiff's testimony and was inconsistent with the non-examining physician's opinion, where the ALJ failed to consider the other factors discussed in 20 C.F.R. § 404.1527(c)(2)–(6)); *see also Weiskopf v. Berryhill*, 693 F. App'x 539, 541 (9th Cir. 2017) ("Even when there is substantial evidence contradicting a treating physician's opinion such that it is no longer entitled to controlling weight, the opinion is nevertheless 'entitled to deference.' . . . To determine the amount of deference, the opinion 'must be weighed using all of the factors provided in 20 C.F.R. [§] 404.1527.'") (citations omitted).[3]

For the above reasons, the Court finds that the ALJ discounted the opinions of Dr. Soni and Dr. Djurisic without providing specific and legitimate reasons supported by

---

[3] Notably, the Ninth Circuit has clarified that "the ALJ is not required 'to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c).'" *Kelly v. Berryhill*, 732 F. App'x 558, 562 n. 4 (9th Cir. 2018). Nevertheless, the ALJ must consider these factors, and there is no indication in the ALJ's decision here, as in *Kelly*, "that the factors were properly considered." *Id.*

substantial evidence in the record.[4] This error is harmful and requires remand. *See Bowers-Crawford v. Comm'r*, 291 F. Supp. 3d 912, 921 (D. Ariz. 2017).

## B. Whether the ALJ Improperly Evaluated Plaintiff's Testimony

Plaintiff next claims that the ALJ improperly evaluated her subjective pain and symptom testimony. (Doc. 10 at 19).

When assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of his symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins*, 466 F.3d at 883 (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. To make specific findings, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ's credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*,

---

[4] The Court may only affirm an ALJ's decision based on grounds stated in the ALJ's decision. *See Trevizo*, 871 F.3d at 677 ("[T]he district court erred by developing its own reasons to discount [plaintiff's treating physician's] opinion, rather than reviewing the ALJ's reasons for substantial evidence.").

466 F.3d at 883.

Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely consistent* with the medical evidence and other evidence in the record." (Doc. 9-3 at 29) (emphasis added). In specific, the ALJ pointed to the fact that Plaintiff alleged that she suffered from constant pain which could be "aggravated by pretty much anything," but yet the "the record, including a December 4, 2015 treatment report, which showed a musculoskeletal examination was unremarkable with no reports of back or extremity pain[,] . . . does not support this." (*Id.*). The ALJ also noted that although Plaintiff "alleged suffering from significant physical limitations, which preclude her from working," this is "inconsistent with reports showing a normal gait and stance . . . with full motor strength in the bilateral extremities." (*Id.*).

As a preliminary matter, the Court finds the phrase "not entirely consistent" to be unclear, as it "sheds no light on the weight that was given to this testimony, or to what degree it was, or was not, consistent with any specific evidence in the record." *Fleming v. Berryhill*, No. 17-CV-04145-RMI, 2018 WL 4586160, at *6 (N.D. Cal. Sept. 24, 2018) (finding the ALJ's assertion that the plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with the medical evidence in the record to be unclear) (citing *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony.")).

Notably, the ALJ's contention that Plaintiff's statements "are not entirely consistent with the medical evidence" is the only reason the ALJ offers for giving Plaintiff's testimony less weight. (Doc. 9-3 at 29).[5] The Court does not doubt that

---

[5] While the ALJ also states that Plaintiff's testimony is "not entirely consistent" with "other evidence of record," (Doc. 9-3 at 29), the only evidence she points to in support of this contention is medical evidence. (*See* Doc. 9-8 at 18, 36–37, 79, 147).

"medical evidence is . . . a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). Nevertheless, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Id.*; *see Robbins*, 466 F.3d at 883–84 (holding that substantial evidence did not support the ALJ's adverse credibility finding—where the ALJ found the plaintiff's testimony to be "not entirely credible," in part, because it was "not consistent with or supported by the overall medical evidence of record"—because the ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence").[6] Accordingly, because the ALJ here gave Plaintiff's testimony less weight solely on the ground that it was "not fully consistent" with the medical evidence, the Court finds that substantial evidence does not support the ALJ's findings. Therefore, this case must be remanded to the ALJ to make adequate findings. *See Light*, 119 F.3d at 792–93.

Not only does the ALJ's failure to articulate an acceptable reason for discrediting Plaintiff's testimony alone demonstrate that substantial evidence does not support the ALJ's findings, but the Commissioner's argument that the "objective medical evidence contradicted Plaintiff's statements concerning her symptoms and limitations" indicates that the Commissioner and the ALJ may have a "fundamental misunderstanding of fibromyalgia." *Revels*, 874 F.3d at 662. Similar to *Benecke v. Barnhart*, the "ALJ erred by 'effectively requir[ing] 'objective' evidence for a disease that eludes such measurement.'" *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (finding that "the ALJ erred in discounting the opinions of [the plaintiff's] treating physicians and instead

---

[6] *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792–93 (9th Cir. 1997) ("In this case, the ALJ disbelieved Light because no objective medical evidence supported Light's testimony regarding the severity of subjective symptoms from which he suffers, particularly pain. An ALJ may not discredit a claimant's subjective testimony on that basis. To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony. Because the ALJ failed to articulate an acceptable reason . . . for disbelieving Light's testimony . . . , this case must be remanded to the ALJ to make adequate findings.").

relying on his disbelief of [the plaintiff's] symptom testimony as well as his misunderstanding of fibromyalgia," despite the fact that each rheumatologist who treated the plaintiff diagnosed her with fibromyalgia and the plaintiff "consistently reported severe fibromyalgia symptoms") (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)). Rather, "[g]iven the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and resulting functional limitations." *Satterwaite*, 781 F. Supp. 2d at 912 (citing *Green-Younger*, 335 F.3d at 108); *see also Hamilton-Carneal v. Colvin*, 670 Fed. App'x. 613, 613 (9th Cir. 2016) (As fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," the ALJ "erred by discounting [the plaintiff's] 'subjective complaints and limitations' [resulting from fibromyalgia] as 'simply out of proportion to and not corroborated by the objective medical evidence.'").

Further, this case is analogous to *Revels v. Berryhill*, where the Ninth Circuit held that the ALJ's adverse credibility determination was erroneous, in part, because the ALJ failed to provide clear and convincing reasons for rejecting the plaintiff's testimony. *Revels*, 874 F.3d at 666. In *Revels*, the plaintiff also suffered from fibromyalgia, and the ALJ stated that the plaintiff's testimony "was undercut by the lack of 'objective findings' supporting her claims of severe pain." *Id.* In support of this, the ALJ highlighted some of the plaintiff's examinations with "mostly normal" results, including an X-ray and MRIs of the plaintiff's neck and back, as well as medical records indicating that the plaintiff exhibited "normal muscle strength, tone, and stability, as well as a normal range of motion" at several doctor's appointments." *Id.* Nevertheless, the Ninth Circuit determined that "the examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia." *Id.*

Likewise, the ALJ here found that Plaintiff's testimony was "not entirely consistent with the medical evidence" by highlighting Plaintiff's testimony that she suffered from constant pain which could be "aggravated by pretty much anything," but yet a treatment report from December 2015 indicated that Plaintiff was not suffering from

back pain at that visit. (Doc. 9-3 at 29). Further, the ALJ noted that Plaintiff's allegations that she suffered "from significant physical limitations, which preclude her from working," is "inconsistent with reports showing a normal gait and stance . . . with full motor strength in the bilateral extremities." (*Id.*). However, as in *Revels*, the examination results which the ALJ relies on to discredit Plaintiff's testimony are "perfectly consistent with debilitating fibromyalgia." *Revels*, 874 F.3d at 666; *see also Tully*, 943 F. Supp. 2d at 1164 (finding that the ALJ's determination that the plaintiff "was not credible because the record lacked 'objective findings' to support her fibromyalgia related disabling pain" was erroneous where medical professionals acknowledged the plaintiff had fibromyalgia and the ALJ determined that the plaintiff's severe impairments included fibromyalgia).

Indeed, the bulk of the medical evidence here supports and corroborates Plaintiff's testimony. Multiple physicians have diagnosed Plaintiff with fibromyalgia, (*see* Doc. 9-8 at 19, 140), and the ALJ determined that Plaintiff's severe impairments include fibromyalgia, (Doc. 9-3 at 25). Moreover, Plaintiff points out that she has consistently had "diffuse chronic pain, multiple tender points consistent with fibromyalgia, and sleep problems, which are the hallmarks of disabling fibromyalgia." (Doc. 10 at 15 (citing *Revels*, 874 F.3d at 656)). The ALJ even acknowledged that Plaintiff "reported generalized pain throughout the body . . . and presented with more than 11 positive trigger points." (Doc. 9-3 at 28 (citing Doc. 9-8 at 19, 140, 142)). Notably, eleven or more tender points is "the cutoff for a diagnosis of fibromyalgia" under Social Security Ruling 12-2P, and "tender-point examinations themselves constitute 'objective medical evidence' of fibromyalgia." *Revels*, 874 F.3d at 663 (citing SSR 12-2P, 2012 WL 3104689, at *2–3 (S.S.A. July 25, 2012)); *see also Rollins*, 261 F.3d at 863 ("The most clear objective medical indication of fibromyalgia is tenderness at at least eleven of eighteen specific points on the body."). Therefore, the ALJ's determination that Plaintiff's testimony was "not entirely consistent with the medical evidence," (Doc. 9-3 at 29), was erroneous. *See Tully*, 943 F. Supp. 2d at 1164.

In sum, the Court finds that the ALJ failed to provide "specific, clear and

convincing reasons" for discrediting Plaintiff's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). Accordingly, the ALJ improperly discounted the credibility of Plaintiff's testimony about the severity, intensity, and limiting effects of her symptoms.

### C.    Whether the ALJ Improperly Determined Plaintiff's RFC

Plaintiff also claims that the ALJ failed to properly determine her RFC. (Doc. 10 at 14). The Court agrees. Because the ALJ failed to provide clear and convincing reasons for giving little weight to the opinions of Dr. Soni and Dr. Djurisic and for finding Plaintiff's testimony not entirely credible, substantial evidence does not support the ALJ's assessment of Plaintiff's RFC. *See Lingenfelter*, 504 F.3d at 1040 ("Because the ALJ did not provide clear and convincing reasons for excluding [the plaintiff's] pain and symptoms from his assessment of [the plaintiff's] RFC, substantial evidence does not support the assessment."); *see also Robbins*, 466 F.3d at 883 ("In determining a claimant's RFC, . . . '[c]areful consideration' [must] be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'") (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (In assessing a claimant's RFC, the ALJ "will also consider descriptions and observations of [the claimant's] limitations from [his or her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [the claimant.]").

The Commissioner counters that the ALJ is not required to include opinion evidence, such as Plaintiff's reports and medical opinions, in the RFC finding where those opinions have been properly discounted. (Doc. 12 at 7 (citing *Batson*, 359 F.3d at 1197) (holding that the "ALJ was not required to incorporate evidence from the opinions of [the plaintiff's] treating physicians, which were permissibly discounted," in the ALJ's determination of the plaintiff's RFC)). Nevertheless, the Court found, *supra*, that the ALJ did not properly discount the opinions of Dr. Soni and Dr. Djurisic, nor properly discount Plaintiff's testimony.

Moreover, this case is similar to *Payan v. Colvin*, where the "ALJ concluded that [the plaintiff] suffered from fibromyalgia and other severe impairments, yet she rejected (1) the assessment of [the plaintiff's] treating physician and (2) [the plaintiff's] subjective symptom testimony, because neither was supported by objective medical evidence." *Payan v. Colvin*, 672 F. App'x 732 (9th Cir. 2016). There, the Ninth Circuit found that the ALJ failed to properly assess the plaintiff's RFC in light of Social Security Ruling 12-2p, which "precludes the ALJ from rejecting alleged functional limitations based solely on a lack of objective medical evidence." *Id.* Likewise, the ALJ erred here by rejecting Plaintiff's alleged functional limitations solely based on the ALJ's determination that Plaintiff's testimony and the opinions of Dr. Soni and Dr. Djurisic were "unsupported by clinical findings on examination" and "not entirely consistent with the medical evidence." (Doc. 9-3 at 29). As a result, the Court finds that the ALJ failed to properly assess Plaintiff's RFC, thus requiring remand for further proceedings.

## D. Whether the Appeals Council Failed to Properly Consider New Evidence

Plaintiff contends that the Appeals Council erred in failing to properly consider the report and functional assessment of Dr. Briggs dated January 30, 2017. (Doc. 10 at 22); (*see* Doc. 1-2 at 1–18). In its denial of Plaintiff's request for review of the ALJ's decision, the Appeals Council stated that this new evidence from January 30, 2017 did not relate to the period at issue since the ALJ decided Plaintiff's case through June 2, 2016, and, therefore, "does not affect the decision about whether [Plaintiff was] disabled beginning on or before June 2, 2016." (Doc. 9-3 at 3). This is consistent with 20 C.F.R. § 404.970(b), which states: "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

Notably, the Court does "not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

1157, 1161 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)); *see also Bifarella v. Colvin*, 51 F. Supp. 3d 926, 932–33 (E.D. Cal. 2014) ("[T]he Ninth Circuit has made clear that district courts do not have jurisdiction to review whether or not an Appeals Council appropriately denied a request for review of an ALJ's decision."). Thus, the Court has no jurisdiction to review the Appeal's Council's decision denying Plaintiff's request for review.[7] That is, the Court may neither affirm nor reverse the Appeals Council's decision.

Here, Plaintiff argues that the report and functional assessment of Dr. Briggs "must be considered by the District Court in determining if the ALJ's decision is supported by substantial evidence" because "evidence before the Appeals Council is necessarily part of the administrative record." (Doc. 10 at 22). Nevertheless, Plaintiff's argument relies on an incorrect interpretation of the holding in *Brewes v. Comm'r of Soc. Sec. Admin*. In *Brewes*, the Ninth Circuit held that "when the Appeals Council *considers* new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163 (emphasis added).[8] The operative word here is "considers." For instance, in *Brewes*, the Appeals Council explicitly noted in its review of the ALJ's decision that it had "considered the additional evidence" which the plaintiff submitted for the first time to the Appeals Council and "found that this information [did] not provide a basis for changing" the ALJ's decision. *Id.* at 1191.

In contrast, the Appeals Council here did not "consider" the report and functional

_____

[7] Nor was the Appeals Council required to provide a detailed explanation or any evidentiary finding as to why the additional evidence submitted by Plaintiff did not warrant review of the ALJ's decision. *See Taylor*, 659 F.3d at 1232.

[8] *See also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("[A]lthough the Appeals Council 'declined to review' the decision of the ALJ, it reached this ruling after . . . examining the entire record, including the additional material[] and conclude[ed] that the ALJ's decision was proper and that the additional material failed to 'provide a basis for changing the hearing decision.' For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.").

assessment of Dr. Briggs in its decision denying Plaintiff's request for review of the ALJ's decision. (Doc. 9-3 at 3). Rather, the Appeals Council indicated that it would not consider this additional evidence because it "does not relate to the period at issue" and therefore "does not affect the decision about whether [Plaintiff was] disabled" at the relevant time. (*Id.*); *see also Galligan v. Astrue*, 656 F. Supp. 2d 1067, 1092–93 (D. Ariz. 2009) (distinguishing between records considered by the Appeals Council and records post-dating the ALJ's decision, which the Appeals Council did not consider because such information did "not affect the decision about whether [the plaintiff] was disabled" at the relevant time). Accordingly, the new evidence Plaintiff submitted to the Appeals Council is not part of the administrative record here. The Court cannot affirm, modify, or reverse the ALJ's final decision based upon evidence not included in the transcript of record. 42 U.S.C. § 405(g) ("Upon review of the ALJ's final decision, the "court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added). However, the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see also Orteza*, 50 F.3d at 751.

Evidence is material where it bears "directly and substantially on the matter in dispute." *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). "As such, it must be probative of the claimant's condition at or before the time of the disability hearing." *Held v. Colvin*, 82 F. Supp. 3d 1033, 1042 (N.D. Cal. 2015) (citing 20 C.F.R. § 404.970(b); *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987)). "Good cause can be shown where no party will be prejudiced by the acceptance of additional evidence[.]" *Johnson v. Schweiker*, 656 F.2d 424, 426 (9th Cir. 1981) (internal quotations omitted) (citation omitted); *see also Burton*, 724 F.2d at 1418 (holding that the "fact that the evidence did not exist at the time of the ALJ's decision establishes good cause for

[the plaintiff's] failure to introduce it before the ALJ"). "If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied." *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (citation omitted).

Assuming without deciding that Plaintiff meets the materiality requirement, the Court cannot order this additional evidence to be taken before the Commissioner upon remand because Plaintiff has failed to show good cause for not having sought the opinion of Dr. Briggs earlier. "A claimant does not meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied." *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (citing *Key*, 754 F.2d at 1551); *see also Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001). Rather, the "claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim." *Id.* Plaintiff's assertion that "the report from Dr. Briggs is certainly new as it was not before the ALJ," (Doc. 10 at 22), is not sufficient to explain why Plaintiff did not seek Dr. Brigg's opinion earlier.

Plaintiff's situation here is analogous to *Key v. Heckler*. In *Key*, the plaintiff attempted to present a new medical report supporting his position, but the Ninth Circuit declined to remand the case since the plaintiff "offer[ed] no reason why he had not solicited this information from [the doctor] earlier." *Key*, 754 F.2d at 1551. The Ninth Circuit opined that "the obvious explanation is that when [the plaintiff] failed to succeed in his disability claim . . . he sought out a new expert witness who might better support his position." *Id.* "The 'good cause' requirement would 'be meaningless if such circumstances were sufficient to allow introduction of new evidence.'" *Id.* (quoting *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984)). Accordingly, the Ninth Circuit held that the plaintiff failed to meet the good cause requirement, and declined to remand the case for the consideration of new evidence. *Id.*; *see also Clem*, 894 F.2d at 332–33 (denying plaintiff's request for remand to consider new evidence—including a new medical report supporting plaintiff's position—where

plaintiff offered "no convincing reason" why the evidence could not have been made available earlier and, thus, failed to satisfy the requirement to show good cause for his failure to incorporate the evidence into the record in the prior proceeding); *Kennedy v. Sullivan*, 919 F.2d 144 (9th Cir. 1990) (holding that the district court did not abuse its discretion in not remanding the plaintiff's case for the consideration of new evidence consisting of two medical reports, both of which post-dated the ALJ's decision, where the plaintiff did not meet the good cause requirement because he failed to offer any reason "why this additional information could not have been submitted prior to the denial of his claim").

For the reasons set forth *supra*, remand is not warranted for consideration of the report and functional assessment of Dr. Briggs dated January 30, 2017.

## IV.   CONCLUSION

The Court is unable to deem the errors in the present case to be harmless. *See Molina*, 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination") (citations and quotations omitted); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (noting that "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error"). The ALJ's failure to provide "specific, clear and convincing reasons" for giving little weight to the opinions of Dr. Soni and Dr. Djurisic and for finding Plaintiff's testimony not entirely credible is erroneous. Resolution of these errors is integral to the fair determination of benefits in order to correctly determine Plaintiff's RFC and, accordingly, correctly determine if Plaintiff is disabled. Thus, the ALJ committed harmful error.

Plaintiff argues that the Court should credit the opinions of Plaintiff's treating physicians that "Plaintiff is unable to sustain full-time work activity" as true and remand for an award of benefits. (Doc. 13 at 4). However, this Court has discretion to remand the case for further development of the record or for an award of benefits. *Reddick*, 157 F.3d at 728; *see also Smolen*, 80 F.3d at 1292 (noting that a district court has the discretion to

award benefits only when "the record has been fully developed and where further administrative proceedings would serve no useful purpose"). Even assuming that the three elements of the Ninth Circuit's "credit-as-true rule" are satisfied, the doctrine "envisions 'some flexibility.'" *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (quoting *Connett*, 340 F.3d at 876). The Ninth Circuit has explained that this flexibility "is properly understood as requiring courts to remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014) (citation omitted). Specifically, the Court agrees with the Commissioner that the ALJ needs to reweigh step four and step five. (Doc. 12 at 9). The invalid reasons given by the ALJ for giving little weight to the opinions of Dr. Soni and Dr. Djurisic and for finding Plaintiff's testimony not entirely credible leave open the question of whether Plaintiff was actually disabled. Therefore, "remand for further proceedings is warranted . . . in an exercise of discretion." *Id.* at 1107. Moreover, remand is appropriate to specifically develop the record as to the weight given to Plaintiff's testimony and to the opinions of Dr. Soni and Dr. Djurisic, and for the ALJ to evaluate Plaintiff's testimony and the opinions of Dr. Soni and Dr. Djurisic without reference to inappropriate reasons.[9]

///

///

///

///

///

---

[9] On remand, the ALJ shall not evaluate the report and functional assessment of Dr. Briggs dated January 30, 2017, for the reasons noted *supra*.

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **VACATED**, and the case is **REMANDED** to the agency for further proceedings consistent with this Opinion. The Clerk of the Court shall enter judgment accordingly.

Dated this 23rd day of October, 2018.

James A. Teilborg
Senior United States District Judge